IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RACHEL LYNN HIGGINBOTHAM                                                              PLAINTIFF

v.                             CASE NO.        12-2093

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background:

The plaintiff filed her applications for SSI on July 20, 2009, alleging an onset date of January 14, 2009, due to plaintiff's Bipolar disorder, adhd, and endomitriosis (T. 149). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on July 1, 2010. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 39 years of age and possessed a 10th grade education.  The Plaintiff had past relevant work ("PRW") experience as a waitress, cook, and house cleaner.  (T. 150).

On October 6, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's mood disorder, anxiety disorder, endometriosis, attention deficit disorder, mitral valve prolapse, menorrhagia and Hepatitis C did not meet or equal any Appendix 1 listing. T. 11.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work except that she "is best employed working with things rather tant people and the work would need to be simple and repetitive"  T. 13.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  housekeeping, hand packager, and meat processing.  T. 18.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. Severe Impairments:**

The ALJ found that the Plaintiff had sever impairments of mood disorder, anxiety disorder, endometriosis, attention deficit disorder, mitral valve prolapse, severe menorrhagia, and Hepatitis C(20 CFR 416.920(c)). (T. 11).

The Plaintiff contends in his brief that "[D]espite these requirements, there are several impairments which the ALJ did not adequately consider". (ECF No. 10, p. 11). At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985). If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

The Plaintiff does not refer to which impairment he considers his proof establish was "severe" that the ALJ did not consider severe[2]. The Plaintiff does refer to the ALJ discounting the opinion of Ed Hedinger, LPC (Licensed Professional Counselor) but that argument goes to the ALJ's RFC determination and will be dealt with below. The Plaintiff's argument that the ALJ failed to consider other severe impairments is without merit.

**B. RFC**

The ALJ found that the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is best employed working with things rather than people and the work would need to be simple and repetitive. (T. 13).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work

---

[2]Bipolar Disorder is encompassed in the general category of Mood Disorders. See DSM IV, p. 345.

activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Cox v. Astrue, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

    **1. Credibility**

The Plaintiff contends that she is "By Polor" without meds (T. 138) and that she has difficulty with lifting, walking, stair climbing, kneeling, talking, bending, memory, concentration, completing tasks, understanding and following instruction. (T. 142). In her Pain

Report, filed September 19, 2009, the Plaintiff stated that she had pain in her hip and leg "half the day & half the night" and that her medication caused her pain (T. 160). She complained that the pain would wake her up at night (T. 163) and that she her impairments affect her inter alia her walking and sitting (T. 167). She also complained that she had trouble with memory, concentration, completing tasks, understanding, following instruction, and getting along with others. (Id.).

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ stated that after " careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 15).

While the Plaintiff contended in her Disability Report that it was her medication that caused her pain the court cannot find any instance, nor is directed to a medical record, where the Plaintiff complained to her treating physician that her medication was causing pain. The Plaintiff treating physician, Doctor Miller, did diagnose her with dysmenorrhea[3], menorrhagia[4] between March 2009 and April 2009 (T. 245, 242, 239, 233) but the Plaintiff never complained to him that her seroquel was causing pain although Dr. Williams noted in July 2009 that "she did not tolerate Seroquel" (T. 243). Dr. Miller ultimately diagnosed the Plaintiff with Episodic Mood

---

[3]Dysmenorrhea is the occurrence of painful cramps during menstruation.

[4]Excessively heavy menstrual flow with cycles of normal length.

Disorder and referred her to WACAG for mental treatment. (T. 235). At WACAG she was initially prescribed Geodon[5] (T. 254). The Plaintiff, however, claimed the Geodon caused "side effect" and requested Seroquel (T. 255) which was prescribed for her. (T. 256). On July 21, 2009, one day after filed for disability, she reported to APN Slavens that the "Seroquel was helping" (T. 257). On August 4, 2009 the Plaintiff also reported that she "was doing well' and was "pleased with her medications". (T. 259). In November 2009 the Plaintiff reported to APN Slavens that she was still taking the Seqroquel and it was "effective for her symptoms" (T. 301). In March 2010 the Plaintiff visited Vista Health and complained that WACAG had stopped her Seroquel. (T. 316).

As pointed out there was never any complaint to a medical provider that her medication was causing her physical pain. The Plaintiff's representations on the Disability Report are inconsistent with the record.

The ALJ noted that the claimant was seen at St. Edward Mercy Medical Center in October and November of 2009 with complaints of chest pain. X-rays of her chest were mostly normal with mild opacity in the right middle lobe appearing on an x-ray in November. After both visits, the claimant was released with instructions to take medicine as prescribed to her and cease smoking. (Exhibit 17F). The Plaintiff's smoking was assessed as early as July 24, 2009 (T. 237) and it was discussed with her by her treating physician in April 2009 (T. 237). In October 2009 she was specifically admonished to "stop smoking". (T. 338). In November 2009 she was still

---

[5]Geodon (ziprasidone) is an antipsychotic medication. It works by changing the effects of chemicals in the brain. Geodon is used to treat schizophrenia and the manic symptoms of bipolar disorder (manic depression). See www.drugs.com

smoking. (T. 323). The is no evidence in the record that the Plaintiff has headed her doctor's advice to stop smoking. It also appears that the Plaintiff has been, on occasion, non-compliant with taking medication. (T. 256)

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart*  457 F.3d 865, 872 (C.A.8 (Mo.),2006).  See *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

When Plaintiff filed for SSI on July 20, 2009 she did not list Mitral Valve Prolapse[6] (MVP) as a basis for her inability to work. The fact that the plaintiff did not allege the impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of the impairment  was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).  It also does not appear that her treating physician diagnosed her with MVP in June 2009 even though she related her past history. (T. 236-237).

---

[6]Mitral valve prolapse is a heart disorder that occurs when the valve between the heart's left upper chamber (left atrium) and the left lower chamber (left ventricle) doesn't close properly. Mitral valve prolapse is often harmless. Most people who have mitral valve prolapse don't require treatment. If leakage is severe, however, the mitral valve may need to be repaired or replaced.  See www.mayoclinic.org

Plaintiff testified that she takes Metoprolol[7] for her chest pain (T. 47) and she listed that as medication she was taking when she filed. (T. 184). It appears that she was on Metoprolol 25 mg bid. (T. 301) but the court is unable to determine when that was initially prescribed for her. Regardless, he treating physician noted in July 2009 that "no murmurs were heard despite hx of MVP". (T. 244). The Plaintiff acknowledged that she had this condition since age 16 (T. 47) and there is nothing in the medical records to indicate that this would cause the debilitating pain the Plaintiff complains of.

In regards to the Plaintiff 's abdominal pain the ALJ noted that the ultrasound of April 2009 was basically unremarkable. (T. 229). She was diagnosed with dysmenorrhea (painful cramps during menstruation) and treated with medication.

Concerning her mental health, the ALJ noted that treatment records from Western Arkansas Counseling and Guidance Center showed that once she began medication treatment, at all of her appointments with Ms. Slavens, she was noted to have good grooming and hygiene; she was cooperative with good eye contact; her speech was at times emotional and rapid, but this was improving; and she was never found to have hallucinations, psychoses, suicidal, or homicidal ideation (Tr. 16, 257, 259, 302). Her memory was good and intact; she was fully oriented; and her concentration, judgment, and insight were fair to good and improved (Tr. 257, 259, 302). Thus, the objective evidence did not substantiate her claim of total disability.

Contrary to Plaintiff's claim that her conditions have been "substantially .unimproved, and in fact deteriorating since at least March of 2009," the ALJ noted that Plaintiff "has been

---

[7]Metoprolol is in a group of drugs called beta-blockers. Beta-blockers affect the heart and circulation (blood flow through arteries and veins). Metoprolol is used to treat angina (chest pain) and hypertension (high blood pressure). It is also used to treat or prevent heart attack.

prescribed and taken appropriate medications for the alleged impairments, which weighs in [her] favor, but the medical records reveal that the medications have been relatively effective in controlling [her] symptoms" (Tr. 15)

The ALJ's decision also reflects that he considered Plaintiff's daily activities and her inconsistent statements in discrediting Plaintiff (Tr. 12, 15, 16). *See Clevenger v. SSA*, 567 F.3d 971, 976 (8th Cir. 2008); 20 C.F.R. § 416.929(c)(3)(I).  Plaintiff contends that her conditions worsened after she quit in May 2008, but, as the ALJ noted, Function Reports that she completed in June and September 2009 showed that she took care of her husband, three boys, and pets, and she was able to clean her house, prepare daily meals, do the laundry, do the dishes, vacuums, and go grocery shopping twice a month (Tr. 12, 137-140, 162-165). See Pl.'s Br. at p. 13. The ALJ also noted that Plaintiff went out of town on vacation in June 2009, which suggested that her symptoms and  limitations may have been overstated (Tr. 15, 254). The ALJ found her alleged activities of daily living to be consistent with the state agency medical consultant's opinion and the residual functional capacity assessment (Tr. 16).

In addition the court notes that on March 10, 2010 the Plaintiff was seen and evaluated by Wanda Hoffman, RN who  evaluated her Impairments as Mild. (T. 318).

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003);  *Human v. Barnhart*,  2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006).  The court has reviewed the entire record and finds that ALJ properly discounted the credibility of the Plaintiff.

**2. RFC Assessment**

The Plaintiff contends that the ALJ erred in discounting the opinion of Mr. Hedinger, who has a master's degree and is also an LPC[8]. (ECF No. 10, p. 12). In June 2010, Mr. Hedinger provided a Psychiatric Review Technique (T. 355-366) which found the Plaintiff to have Memory Impairment and Perceptual or thinking disturbances (with concentration problems) (T. 356) and felt that she had Marked Limitations in her Daily Living, Social Functioning, Concentration, and Decompensation. (T. 365). Mr. Hedinger provided a Mental Assessment of Ability to do Work-Related Activities (T. 367- 368) and a Mental RFC Assessment which found the Plaintiff to be Markedly Limited in every category except her ability to carry out short and simple instructions (T. 370), sustain ordinary routine, simple work related decisions, interact appropriately, ask simple question, accept instruction, get along without distraction, socially appropriate behavior, (T. 371) and to be aware of normal hazards (T. 372).

The ALJ first noted that Mr. Hedinger's opinion was "not an acceptable medical source" (T. 15). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. § § 404.1513(a), 416.913(a) (2007). *Sloan v. Astrue* 499 F.3d 883, 888 (C.A.8 (Iowa),2007). However, opinions from other medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. *Sloan v. Astrue*, 499 F.3d 883, 888 (C.A.8 (Iowa),2007). The ALJ stated that he did "give consideration" to Mr. Hedinger's opinion and then went on to state the reasons for discounting his opinion. (T. 15-16). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any

---

[8]Licensed Professional Counselor

inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir.2005

Paula Lynch, a consultive psychologist, diagnosed the Plaintiff with ADHD (T. 277) and Mood Disorder, NOS (T. 279). She found her functional limitations to be Moderate (T. 286) and she provided a Mental RFC Assessment that found the Plaintiff to no have any Markedly Limited areas of functioning. (T. 272-273). She felt the Plaintiff was able to perform work "where interpersonal contact is incidental to work performed. (T. 274). Dr. Mourot, Ph.D. reviewed and affirmed the opinion of Ms. Lynch on November 6, 2009. Dr. Gayle Monnig, a licensed psychologist testified at the hearing that she did not find that the symptoms exhibited in the Plaintiff's case met the diagnostic criteria for Bipolar. (T. 30).

The ALJ properly noted in his review of the mental health treatment records the fact that Mr. Hedinger had seen Plaintiff just twice for psychotherapy (Tr. 14). Although she had seen Mr. Hedinger when she first came to the clinic for treatment in June 2009 for an assessment, she did not see him for therapy sessions until March 2010 (T. 351) and then saw him again in May 2010 (Tr. 301). Thus, the record does not establish any long-term treatment relationship prior to Mr. Hedinger's rendering his restrictive opinions in June 2010.

The ALJ also noted that Mr. Hedinger opined that as of June 24, 2010, Plaintiff's treatments had only minimally helped her, and that Plaintiff was markedly limited in most of her abilities (Tr. 15, 370-373). This assessment is contradicted by WACAG own records and by the state agency consultive experts. It is also contradicted by Nurse Wanda Huffman's assessment of the Plaintiff on March 5, 2010. (T. 318).

"When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *See Wildman v. Astrue* 596 F.3d 959, 969 (C.A.8

(Iowa),2010) citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir.2007). The court has reviewed the facts and reasoning applied by the ALJ for discounting the opinion of Mr. Hedinger that the ALJ properly applied factors set forth in Sloan in discounting Mr. Hedinger's opinion.

### 3. Development of the Record

The Plaintiff contends that the ALJ failed to develop the record concerning the Plaintiff's intellectual abilities. (ECF No. 10, p. 15). The Plaintiff argues that her intellectual functioning was in question as a result of a test on June 28, 2010 which listed her Grade Equivalency in Math and Reading at 3rd grade and above but Language, Vocabulary, and Spelling at below 3rd grade. (T. 205). The test evidently was administered by the Van Buren Adult Education Center. (T. 51). The Plaintiff dropped out of school in the ninth grade and never received her G.E.D.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The Plaintiff did not raise Borderline Intellectual Functioning in her initial claim for disability (T. 149). Her attorney did not raise the issue in his Pre-Hearing Brief but asserted that she could not work because of her "ongoing problems associated with bipolar disorder with

chronic depression and personality disorder, endometriosis, mitral valve prolapse, anxiety, severe dysmenorrhea, severe menorrhagia, esophageal reflux, and hepatitis C .

Although the ALJ is required to fairly and fully develop the record in a social security disability benefits case, he is not obliged to investigate a claim not presented at time of the application for benefits and not offered at hearing as a basis for disability. *Halverson v. Astrue* 600 F.3d 922 (C.A.8 (Ark.), 2010).

The Plaintiff admitted that when she stopped working in May 2008, it was to "stay home with my kids because I didn't have a baby sitter." (T. 149). There is no assertion that the Plaintiff could not work because of her limited education but even so the ALJ's RFC limits her employment to "working with things rather than people and the work would need to be simple and repetitive." The RFC certainly takes into consideration the Plaintiff's limited education.

Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *See Haley*, 258 F.3d at 748; *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this instance the court finds that the Plaintiff's claim that the ALJ failed to fully and fairly develop the record concerning the Plaintiff's BIF is without merit.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this May 1, 2013.

*/s/ J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE